# CIVIL COVER SHEET

JS-44 (Rev. 3/13 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>**(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>**(IN U.S. PLAINTIFF CASES ONLY)**<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 2 U.S. Government
   Defendant

○ 3 Federal Question
   (U.S. Government Not a Party)

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR
PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal<br>Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A.  *Antitrust***

   410   Antitrust

○ **B.  *Personal Injury/
   Malpractice***

   310 Airplane
   315 Airplane Product Liability
   320 Assault, Libel & Slander
   330 Federal Employers Liability
   340 Marine
   345 Marine Product Liability
   350 Motor Vehicle
   355 Motor Vehicle Product Liability
   360 Other Personal Injury
   362 Medical Malpractice
   365 Product Liability
   367 Health Care/Pharmaceutical
      Personal Injury Product Liability
   368 Asbestos Product Liability

○ **C.  *Administrative Agency
   Review***

   151 Medicare Act

**Social Security**
   861 HIA (1395ff)
   862 Black Lung (923)
   863 DIWC/DIWW (405(g))
   864 SSID Title XVI
   865 RSI (405(g))
**Other Statutes**
   891 Agricultural Acts
   893 Environmental Matters
   890 Other Statutory Actions (If
      Administrative Agency is
      Involved)

○ **D.  *Temporary Restraining
   Order/Preliminary
   Injunction***

   Any nature of suit from any category
   may be selected for this category of case
   assignment.

   *(If Antitrust, then A governs)*

○ **E.  *General Civil (Other)***        **OR**        ○ **F.  *Pro Se General Civil***

**Real Property**
   210 Land Condemnation
   220 Foreclosure
   230 Rent, Lease & Ejectment
   240 Torts to Land
   245 Tort Product Liability
   290 All Other Real Property
**Personal Property**
   370 Other Fraud
   371 Truth in Lending
   380 Other Personal Property
      Damage
   385 Property Damage
      Product Liability

**Bankruptcy**
   422 Appeal 27 USC 158
   423 Withdrawal 28 USC 157

**Prisoner Petitions**
   535 Death Penalty
   540 Mandamus & Other
   550 Civil Rights
   555 Prison Conditions
   560 Civil Detainee – Conditions
      of Confinement

**Property Rights**
   820 Copyrights
   830 Patent
   840 Trademark

**Federal Tax Suits**
   870 Taxes (US plaintiff or
      defendant)
   871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
   625 Drug Related Seizure of
      Property 21 USC 881
   690 Other

**Other Statutes**
   375 False Claims Act
   400 State Reapportionment
   430 Banks & Banking
   450 Commerce/ICC
      Rates/etc.
   460 Deportation
   462 Naturalization
      Application
   465 Other Immigration
      Actions
   470 Racketeer Influenced
      & Corrupt Organization

   480 Consumer Credit
   490 Cable/Satellite TV
   850 Securities/Commodities/
      Exchange
   896 Arbitration
   899 Administrative Procedure
      Act/Review or Appeal of
      Agency Decision
   950 Constitutionality of State
      Statutes
   890 Other Statutory Actions
      (if not administrative agency
      review or Privacy Act)

| ○ **G.  *Habeas Corpus/ 2255*** | ○ **H.  *Employment Discrimination*** | ○ **I.  *FOIA/Privacy Act*** | ○ **J.  *Student Loan*** |
|---|---|---|---|
| **530 Habeas Corpus – General**<br>**510 Motion/Vacate Sentence**<br>**463 Habeas Corpus – Alien Detainee** | **442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)**<br><br>**\*(If pro se, select this deck)\*** | **895 Freedom of Information Act**<br>**890 Other Statutory Actions (if Privacy Act)**<br><br>**\*(If pro se, select this deck)\*** | **152 Recovery of Defaulted Student Loan (excluding veterans)** |
| ○ **K.  *Labor/ERISA (non-employment)*** | ○ **L.  *Other Civil Rights (non-employment)*** | ○ **M.  *Contract*** | ○ **N.  *Three-Judge Court*** |
| **710 Fair Labor Standards Act**<br>**720 Labor/Mgmt. Relations**<br>**740 Labor Railway Act**<br>**751 Family and Medical Leave Act**<br>**790 Other Labor Litigation**<br>**791 Empl. Ret. Inc. Security Act** | **441 Voting (if not Voting Rights Act)**<br>**443 Housing/Accommodations**<br>**440 Other Civil Rights**<br>**445 Americans w/Disabilities – Employment**<br>**446 Americans w/Disabilities – Other**<br>**448 Education** | **110 Insurance**<br>**120 Marine**<br>**130 Miller Act**<br>**140 Negotiable Instrument**<br>**150 Recovery of Overpayment & Enforcement of Judgment**<br>**153 Recovery of Overpayment of Veteran's Benefits**<br>**160 Stockholder's Suits**<br>**190 Other Contracts**<br>**195 Contract Product Liability**<br>**196 Franchise** | **441 Civil Rights – Voting (if Voting Rights Act)** |

**V. ORIGIN**

| ○ 1 Original Proceeding | ○ 2 Remand from State Court | ○ 3 Remanded from Appellate Court | ○ 4 Reinstated or Reopened | ○ 5 Transferred from another district (specify) | ○ 6 Multi-district Litigation | ○ 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $**<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>**YES          NO** |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | **YES          NO** | If yes, please complete related case form |

DATE: _____        SIGNATURE OF ATTORNEY OF RECORD _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**     CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Remand from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Plaintiff brings suit against Defendants based on diversity jurisdiction, 28 U.S.C. 1332, and asserts claims of breach of con▮

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ >$75,000<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction)   YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|

DATE: 11/12/2013     SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI. CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TO MARKET, LLC,<br>a Delaware limited liability company<br>8899 Beverly Boulevard,<br>Suite 918, Los Angeles, California<br>90048**,**<br><br>        Plaintiff,<br><br>    v.<br><br>ALFRED LOUIS MINITE, an individual;<br>ALKS & ASSOCIATES, a Maryland Corporation;<br>SIENA, LLC, a Maryland limited liability company;<br>TERESA ANN MATHESON, an Individual,<br><br>        Defendants. | CIVIL ACTION<br><br>NO.<br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, To Market, LLC ("To Market") files this Verified Complaint against Defendants Alfred Louis Minite ("Minite"), ALKS & Associates ("ALKS"), Siena, LLC ("Siena"), and Teresa Ann Matheson ("Matheson"), and demanding trial by jury, alleges as follows:

## INTRODUCTION

1.     This case arises out of the Defendant Minite's systematic and unlawful self-dealing in violation of his broker agreement with To Market as well as his theft and misuse of To Market's confidential and proprietary materials.

1

2.      Specifically, Minite and his company, ALKS, entered into a written agreement with To Market whereby Minite and ALKS agreed to devote their "entire business efforts" to the marketing and sale of To Market's flooring products.

3.      As part of this agreement, Minite and ALKS were provided with a number of confidential materials from To Market including internal pricing data, confidential marketing plans, sample books, and customer lists.

4.      Unfortunately, rather than devote their entire business efforts to To Market as required under their broker agreement, Minite and his company, ALKS, along with Matheson, conspired to unlawfully compete with To Market by surreptitiously opening up a competing flooring products company known as Siena.

5.      Siena, Minite, ALKS, and Matheson then proceeded to interfere with To Market's business by diverting sales to Siena that otherwise should have gone to To Market and by soliciting To Market's customers and sales representatives.

6.      Minite and ALKS also have refused to properly account for or return any of the confidential and proprietary materials provided to them by To Market during the course of their performance under the broker agreement.

7.      To make matters worse, upon information and belief, the Defendants have also implemented a plan whereby they have been removing To Market's product sample books from numerous architectural depository locations, and replacing those books with sample books from Siena.

8.      The Defendants have also solicited several of To Market's current and former employees and vendors in an effort to further utilize To Market's confidential and proprietary

2

materials and in an effort to induce those persons to violate the terms of their confidentiality agreements.

9.      Most recently, Minite hired To Market's former national sales manager, Larry Pope.  Within the past few days, Minite, ALKS, Siena, and Matheson tasked Pope – who is armed with a great deal of proprietary and confidential information, including supplier and cost lists – to approach To Market's largest supplier for the purpose of competing with To Market.

10.     As a result of this conduct, To Market has sustained substantial damages in the form of lost sales and profits, in addition to the reasonable value of the property unlawfully converted and reputational damage.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(a)(1) as there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

12.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

13.     Plaintiff To Market, LLC ("To Market") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 8899 Beverly Boulevard, Suite #918, Los Angeles, California 90048.  To Market's members are citizens of California, Connecticut, and Delaware.

3

14.     Defendant ALKS & Associates, Inc. ("ALKS") is, upon information and belief, a corporation organized and existing under the laws of the State of Maryland with its principal place of business at 3233 K Street, NW, Washington DC 20007.

15.     Defendant Siena, LLC ("Siena") is, upon information and belief, a limited liability company organized under the laws of the State of Maryland with its principal place of business at 3233 K Street, NW, Washington DC 20007.  Upon information and belief, Siena's only member is Minite, who is a citizen of Maryland.

16.     Defendant Teresa Ann Matheson ("Matheson") is, upon information and belief, an individual and resident of the State of Maryland with a primary residence of 918 Langley Drive, Silver Spring, Maryland 20901.  Upon information and belief, and at all times material hereto, Matheson was an employee and agent of ALKS, Siena, and Minite and all acts and omissions complained of herein were done for her own personal benefit and for the benefit of ALKS, Siena, and Minite.  As the personal and chief assistant to Minite, Matheson assisted the other Defendants and was complicit in the unlawful conduct complained of herein.

17.     Defendant Alfred Louis Minite ("Minite") is, upon information and belief, an individual and resident of the State of Maryland with a primary residence address of 15700 Amelung Lane, Derwood, Maryland 20855.  Upon information and belief, and at all times material hereto, Minite was the owner and agent of ALKS and Siena and all acts and omissions complained of herein were done for his own personal benefit and for the benefit of ALKS, Siena, and Matheson.

4

**GENERAL ALLEGATIONS**

18.     To Market was founded in 1998 on the principal of bringing "Alternative Materials for Interior Spaces" to the commercial marketplace.

19.     To Market designs and sells environmentally friendly, color coordinated, commercial flooring utilizing recycled and sustainable content, manufactured using state-of-the-art technology.

20.     By partnering and licensing only the most experienced and qualified manufacturers, To Market is able to source and produce its innovative flooring textures both in the United States and internationally.

21.     To Market sells its products through a dedicated sales team that works directly with architects, space planning and design professionals to assist them on specifications of their products and to, ultimately, sell it products to qualified floor covering professionals in a variety of commercial end-use applications including corporate, retail, healthcare/laboratories, assisted living/senior housing, education/institutional, sport facilities and medical offices.

**The Terms of the Broker Agreement**

22.     On January 8, 1999, To Market entered into one of these broker agreements with ALKS and Minite.  Attached hereto as **Exhibit A** is a true and correct copy of that agreement (the "Broker Agreement").

23.     As noted in Section 2 of the Broker Agreement, Minite and ALKS agreed to market, promote and sell To Market's flooring products in the Eastern Region of the United

States, which includes the areas of Washington, DC, Baltimore, MD, and Richmond, VA. Ex. A, at §§1, 2.

24.    In addition to their Eastern Region marketing and sales efforts, Minite and ALKS also agreed to assist To Market in the development of its overall sales and marketing strategies nationally, including the addition of new To Market products to the marketplace and the development of national sales accounts. Ex. A, at §2(e).

25.    Finally, and most importantly, ALKS and Minite expressly agreed to devote "their entire business efforts" to marketing and selling To Market's flooring product line. Ex. A, at §3.

26.    Minite and ALKS were permitted to market and sell other types of flooring products provided that those products did not directly compete with the flooring line offered by To Market. For example, under the terms of the Broker Agreement, Minite and ALKS were allowed to market and sell carpets for a limited period of one year since To Market is not in the business of selling carpeting products.

27.    To Market provided financial compensation to Minite and ALKS for their services and also agreed to grant Minite a 2% ownership interest on an annual basis in To Market, up to a total ownership interest of 8%. Ex. A, at Exhibit B.

28.    In addition to the express terms of the Broker Agreement, ALKS and Minite were also provided with a number of proprietary and confidential materials from To Market to assist them in devoting their "entire business efforts" to To Market's flooring product line.

29.    This proprietary and confidential information included sales methods, distribution methods, consumer profiles, advertising strategies, lists of suppliers and clients, internal material

pricing lists, confidential business plans, product samples, and confidential sales and marketing materials.

**Minite's Performance Under The Broker Agreement**

30.     Based on the good faith assumption that ALKS and Minite were devoting their "entire business efforts" to marketing and selling To Market's flooring product line, To Market compensated Minite and ALKS and, ultimately, granted Minite a minority ownership interest in To Market.

31.     In 2009 through 2011, various meetings and communications were had between To Market and Minite wherein To Market and Minite discussed the possibility of Minite being appointed President of To Market and taking a 25% ownership interest in the company via a direct investment by Minite.

32.     Upon information and belief, during the same time period the parties were negotiating in good faith for Minite's additional investment and new title, Minite, without To Market's knowledge, decided to create his own company, Siena, for the purpose of directly competing with To Market.

33.     Ultimately, the parties were not able to come to an agreement concerning an additional investment by Minite and his title, and the parties continued to operate under their prior agreements.

34.     Given the unlawful conduct of ALKS and Minite, it should come as no surprise that To Market's 2012 sales in ALKS and Minite's Eastern Region began to drop considerably.

35.     In April of 2012, To Market corresponded with Minite and ALKS advising them that their sales for the first four months of 2012 were abysmal and were down about 45% from

7

the same period in 2011.  This, despite the fact that sales overall for To Market nationwide were up 10%.

36.     At that time, Mr. Minite advised To Market that the sole reason for the sales decline was due to the negative economic conditions in the Eastern Region.  No mention was ever made that he was actually diverting sales to his new company, Siena.

37.     During this same time period, To Market continued to send Minite and ALKS confidential and proprietary information related to its marketing, sales, and internal pricing lists.

38.     In September of 2012, To Market received word through various third parties that Minite and ALKS had established another business known as Siena.

39.     At that time, To Market requested additional information on the company from Minite and ALKS and inquired as to whether or not Minite and ALKS would continue to support the To Market product line.

40.     Shortly thereafter, Minite and ALKS assured To Market that is was "committed" to selling To Market's products and that To Market would not suffer any loss of business or revenue as a result of Siena's existence.

41.     Despite these assurances, in 2013, To Market's sales in Minite's Eastern Region continued to fall with sales down another 48% through July of 2013.  This, despite the fact that To Market's overall sales during this time period were up 15% nationwide.

42.     At this point, it became obvious that Minite and ALKS were self-dealing through their Siena line and were in direct violation of the terms of the Broker Agreement which clearly required both ALKS and Minite to devote "their entire business efforts" to the marketing and sale of To Market's flooring products. Ex. A, at §3.

43.     As a result, To Market began an immediate investigation into the matter in order to determine how long ALKS and Minite had been unlawfully competing with To Market and what damages may have been caused as result.

44.     Information obtained through various public sources has established that ALKS and Minite had conspired to unlawfully compete several years before they ever acknowledged their unlawful conduct to To Market.

45.     For example, the records for the Secretary of State for Maryland establish that Minite actually formed Siena in July of 2010.

46.     To Market's investigation also revealed that ALKS and Minite (along with Matheson) were aggressively advertising and marketing Siena's flooring products to the public during the tenure of the Broker Agreement and during the same time they were supposed to devoting their "entire business efforts" to To Market.

47.     For example, in September of 2012, Minite, ALKS, and Matheson launched Siena's website, sienausa.com, offering for sale flooring products that directly competed with To Market.  This website is still in operation.

48.     In November of 2012, ALKS, Minite, and Matheson took out a paid advertisement in the industry trade journal known as "Work Design."

49.     As noted in the article, ALKS, Minite, and Matheson, through Siena, were marketing for sale a line of flooring products that are virtually identical in nature to the products To Market was selling during this same time period.

50.     Upon information and belief, ALKS, Minite, and Matheson have also sold flooring products for a number of other manufacturers during the same time period they were supposed to be devoting their "entire business efforts" to selling To Market's products.

51.     These other manufacturers include, but are not limited to, Junckers, Stile, Tai Ping, and Tajima.

52.     In fact, as it relates to Tai Ping, Tai Ping's website lists ALKS as its sales representative in Maryland, Washington, DC, and Virginia – the same locations that make up To Market's Eastern Region.

### Minite's Termination

53.     As a result of the conduct of both ALKS and Minite, on August 27, 2013, To Market sent a letter terminating its Broker Agreement with ALKS and Minite.  Attached hereto as **Exhibit B** is a true and correct copy of this termination letter.

54.     As noted in the termination latter, To Market demanded an accounting of, and return of all company property in the possession of ALKS and Minite.

55.     To date, neither ALKS nor Minite have returned any of To Market's materials and are believed to now be using them as part of their marketing and sales efforts for Siena.  Instead, Minite, ALKS, and Matheson claimed that they were not in possession of any To Market materials.  This, despite the fact that To Market sent Minite, ALKS, and Matheson tens of thousands of dollars of product sample books during the term of the Broker Agreement.

### Minite's Continued Unlawful Conduct

56.     To add further insult to injury, ALKS and Minite have solicited, and continue to solicit, To Market's sales representatives and customers in the Eastern Region as part of its efforts to market and sell Siena's products.

57.     In as much as these To Market sales representatives are under existing agreements to market and sell To Market's products, such conduct is a direct interference with To Market's contractual relations and prospective economic advantage.  Upon information and belief, Minite and ALKS have unlawfully solicited To Market sales representatives King Bostrom and Barbara Joe Trimble to market and sell Minite's Siena flooring line.

58.     Moreover, Minite and ALKS would not even have the information with which to make these unlawful solicitations but for their continued possession of To Market's proprietary and confidential information including its customer and sales person lists.

59.     Most recently, Minite hired To Market's former national sales manager, Larry Pope, who, as a result of his work for To Market, has a great deal of To Market's proprietary and confidential information, including supplier and cost lists.  Within the past few days, Minite, ALKS, Siena, and Matheson tasked Pope to use this confidential and proprietary information to approach To Market's largest supplier for the purpose of competing with To Market.

60.     To make matters worse, upon information and belief, Minite, Matheson, ALKS or Siena, or someone at their direction, have been removing To Market's product sample books from architectural and design firm depositories throughout Washington, DC, Northern Virginia, and Maryland and replacing them with Siena's product sample books.

11

61.     Among other areas, To Market has confirmed the removal of their books from the following 21 locations:  Perkins and Will (Washington, DC), DBI (Washington, DC and Reston, VA), Geadreau Architects (Baltimore, MD), Fox Architect (Vienna, VA), Studios (Washington, DC), WDG Architects (Washington, DC), OPX Architects (Washington, DC), Soma Architects (Alexandria, VA), Hickok Cole (Washington, DC), Gensler Architects (Washington, DC), GTM Architects (Bethesda, MD), University of Maryland (College Park, MD), HOK Architects (Washington, DC), Stantec/Burt Hill (Washington, DC), Stoiber & Associates (Washington, DC), Smith Group (Washington, DC), EsoArc (Falls Church, VA),McKissack and McKissack (Washington, DC), RTKL (Washington, DC), and HDR (Alexandria, VA).

62.     Upon information and belief, at several of these locations, To Market's product sample books were replaced with Siena materials by the Defendants.

63.     In addition to these unlawful practices, Minite, ALKS, Siena, and Matheson continue to misuse To Market's brand name in an effort to divert sales to Siena.  In this regard, ALKS and Minite's business number continues to be registered to To Market.  Consequently, when a potential customer in the Eastern Region dials information and asks for To Market, they are given the phone number for ALKS and Siena.


**FIRST CLAIM FOR RELIEF**
**(Breach of Contract – Against ALKS and Minite)**

64.     To Market incorporates herein by reference each and every allegation set forth above.

65.     To Market has complied with all of its contractual obligations under the Broker Agreement.

66.     ALKS and Minite had a contractual obligation under its Broker Agreement to devote their "entire business efforts" to the marketing and sale of To Market's flooring products. ALKS and Minite also agreed to assist To Market in the development of its overall sales and marketing strategies, including the addition of new To Market products and the development of national accounts.

67.     By setting up a competing company, Siena, by marketing and selling other flooring products in direct competition with To Market, by soliciting sales representatives and customers of To Market, by removing To Market's materials and product samples from architectural and design firms, by using customer and supplier lists and other proprietary information for their own benefit and to the detriment of To Market, and by refusing to return property owned by To Market, Minite and ALKS have breached their contractual obligations.

68.     As a result of these breaches, To Market has sustained substantial damages including, but not limited to, lost sales and profits in amount to be determined at trial but in no event less than the jurisdictional limitations of this Court.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an amount in excess of $75,000, together with interest, costs, and other such and further relief that the Court deems appropriate.

### SECOND CLAIM FOR RELIEF
**(Interference with Contractual Relations – Against All Defendants)**

69.     To Market incorporates herein by reference each and every allegation set forth above.

70.     As noted above, To Market has a number of existing agreements with its sales representatives, customers and material suppliers.

71.     By virtue of Minite's position as both an owner and Vice-President for To Market, each of the defendants had knowledge of the existence of these agreements.

72.     By contacting and soliciting these sales representatives and customers, the defendants intended to interfere with To Market's existing contractual relations and thereby induce various third parties to breach these agreements.

73.     Upon information and belief, various third-parties have breached their agreements and To Market has lost sales as a result of the actions of the defendants.

74.     To Market has sustained substantial damages as a result of the unlawful conduct of each of the defendants in amount to be determined at trial but in no event less than the jurisdictional limitations of this Court.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an amount in excess of $75,000, together with punitive damages, interest, costs, and other such and further relief that the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Tortious Interference with Prospective Economic Advantage – Against All Defendants)**

75.     To Market incorporates herein by reference each and every allegation set forth above.

76.     By unlawfully soliciting To Market's existing sales persons, by breaching its "entire business efforts" obligations under the Broker Agreement, by soliciting existing

14

customers of To Market while under contract, by tasking former To Market employees to use confidential and proprietary information to approach suppliers for the purpose of competing with To Market, and by soliciting current and former employees and vendors of To Market in violation of certain confidentiality agreements, the defendants have unlawfully and intentionally interfered with To Market's prospective economic advantage.

77.     To Market has sustained substantial damages as a result of the unlawful conduct of each of the defendants in amount to be determined at trial but in no event less than the jurisdictional limitations of this Court.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an amount in excess of $75,000, together with punitive damages, interest, costs, and other such and further relief that the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
### (Fraud/Intentional Misrepresentation– Against ALKS and Minite)

78.     To Market incorporates herein by reference each and every allegation set forth above.

79.     When pressed on the reasons for the precipitous declines in sales in the Eastern Region, Minite and ALKS lied to To Market about the true reasons for this decline, instead, blaming it on economic factors.

80.     In doing so, ALKS and Minite failed to advise To Market that ALKS and Minite had actually opened up their own competing business, Siena, to directly compete with To Market.  These were materials facts.

15

81.     These intentional misrepresentations were knowingly made by Minite and ALKS for the purpose of inducing To Market into continuing the relationship with ALKS and Minite.

82.     To Market relied to its detriment on the false statements made by Minite and ALKS and, as a result of this reliance, were essentially funding the formation and startup of its own competitor.

83.     Had Minite and ALKS advised To Market of its unlawful conduct at the outset, To Market would have terminated Minite and ALKS upon a much earlier time frame and would have known to take a more proactive approach in securing its property and business relationships.

84.     Instead, Minite and ALKS surreptitiously formed their own competing business and continued to use To Market's proprietary and confidential business information to assist them in their new business enterprise.

85.     As a result of this fraudulent conduct, To Market has sustained substantial damages in amount to be determined at trial but in no event less than the jurisdictional limitations of this Court.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an amount in excess of $75,000, together with punitive damages, interest, costs, repudiation, and other such and further relief that the Court deems appropriate.

16

**FIFTH CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets – Against All Defendants)**

86.     To Market incorporates herein by reference each and every allegation set forth above.

87.     As noted above, Minite and ALKS's position within To Market afforded them unique access to a number of proprietary and confidential materials and information that was supposed to be utilized by them for the purpose of devoting their "entire business efforts" to marketing and selling To Market's products.

88.     This proprietary and confidential information included sales methods, distribution methods, consumer profiles, advertising strategies, lists of suppliers and clients, internal material pricing lists, confidential business plans, product samples, and confidential sales and marketing materials.

89.     Upon information and belief, when Minite, ALKS, and Matheson made the decision to form a competing business enterprise through Siena, they also began to knowingly misappropriate To Market's confidential and proprietary information for their own personal gain in an effort to assist them in establishing and running their new business.

90.     In doing so, Minite, ALKS, Siena, and Matheson were well aware that this proprietary and confidential information belonged to To Market, had considerable value, and that it should not be used to assist a competitor.

91.     As a result of this misappropriation, To Market has sustained substantial damages in amount to be determined at trial but in no event less than the jurisdictional limitations of this Court.

17

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an amount in excess of $75,000, together with reasonably royalties, punitive damages, interest, costs, and other such and further relief that the Court deems appropriate.

### SIXTH CLAIM FOR RELIEF
**(Conversion – Against All Defendants)**

92.     To Market incorporates herein by reference each and every allegation set forth above.

93.     As noted above, the defendants are in possession of a considerable amount of property that belongs to To Market that was provided to Minite and ALKS as part of their performance under the Broker Agreement.

94.     To Market recently terminated Minite and ALKS and demanded that Minite and ALKS identify the location of any such property and return any such property in their possession, custody or control.

95.     Despite demand having been made, Minite, ALKS, and Matheson have not returned a single item or even acknowledged possession of items known to have been sent to them.

96.     Upon information and belief, these materials were provided and/or used by Minite, ALKS, and Matheson to assist Siena in competing with To Market.

97.     By refusing to return these materials, the defendants have exercised dominion and control over the property of To Market with the intent to permanently deprive To Market of its rights in the property.

18

98.     Moreover, as noted above, Minite was recently caught trying to take materials that belong to To Market out of a design depository.

99.     Upon information and belief, this is not the first time Minite has tried to harm To Market's business by removing sample books from various areas where they might be viewed by potential customers or clients.

100.    As a result of this unlawful conversion, To Market has sustained substantial damages in amount to be determined at trial but in no event less than the jurisdictional limitations of this Court.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an amount in excess of $75,000, together with punitive damages, interest, costs, and other such and further relief that the Court deems appropriate.

## SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment – Against All Defendants)

101.    To Market incorporates herein by reference each and every allegation set forth above.

102.    By way of the acts and omissions referenced above, the defendants, each of them, have been unjustly enriched by profiting from sales which should have been made through To Market under the terms of the Broker Agreement and by misappropriating and unlawfully converting To Market's confidential and proprietary materials for their own use.

103.    In this regard, it would be inequitable for the defendants to be permitted to retain the fruits of their ill-gotten gains.

104.    The defendants, and each them, should be compelled to disgorge to To Market any illicit profits obtained as a result of their conduct as well as compensate To Market for the reasonable value of the information and property taken.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award restitution in an amount in excess of $75,000, together with interest, costs, and other such and further relief that the Court deems appropriate.


**EIGHTH CLAIM FOR RELIEF**
**(Breach of the Covenant of Good Faith and Fair Dealing – Against Minite and ALKS)**

105.    To Market incorporates herein by reference each and every allegation set forth above.

106.    Inherent in every contract is a covenant of good faith and fair dealing between the contracting parties.

107.    Based on the conduct of Minite and ALKS referenced above, Minite and ALKS have breached this covenant as they have dealt with To Market in bad faith and in a way that has caused substantial harm to To Market.

108.    As a result of this breach, To Market has sustained substantial damages in amount to be determined at trial but in no event less than the jurisdictional limitations of this Court.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an

amount in excess of $75,000, together with interest, costs, and other such and further relief that the Court deems appropriate.

### NINTH CLAIM FOR RELIEF
**(Civil Conspiracy – Against All Defendants)**

109.     To Market incorporates herein by reference each and every allegation set forth above.

110.     Minite, ALKS, Siena, and Matheson all conspired with one another to commit the unlawful conduct complained of herein including, but not limited to, the intentional misrepresentations of Minite, ALKS, and Matheson referenced herein, and the misappropriation of To Market's proprietary and confidential materials – all for the unlawful purpose of assisting Siena in setting up its business in direct competition with To Market.

111.     As co-conspirators, each of them is liable for the conduct of the other.

112.     As a result of this conspiracy, To Market has sustained substantial damages in amount to be determined at trial but in no event less than the jurisdictional limitations of this Court.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an amount in excess of $75,000, together with the costs of replacing numerous product and sample books that To Market has been forced to replace as a result of Defendants' removal of those books from architecture and design firms, punitive damages, interest, costs, and other such and further relief that the Court deems appropriate.

21

**TENTH CLAIM FOR RELIEF**
**(Accounting – Against All Defendants)**

113.    To Market incorporates herein by reference each and every allegation set forth above.

114.    By way of the instant complaint, To Market seeks, among other remedies, the recovery of all of its property in the possession of the defendants.

115.    Defendants should be compelled to provide an accounting of all of To Market's property in their possession, custody or control.

116.    In addition, as a result of the defendants' conduct identified above, To Market is seeking the disgorgement of all fees paid to Minite, ALKS, and Matheson as well all profits, as defined as sales less costs of goods sold earned by Minite, ALKS, Siena, or Matheson from the sale of flooring products for other entities during the time period they were supposed to be devoting their "entire business efforts" to marketing and selling To Market's flooring products.

117.    Defendants should be compelled to provide an accounting of all sales made or profits earned as a result of their unlawful conduct during the time period defendants were under contract with To Market.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court award compensatory damages in an amount in excess of $75,000, together with punitive damages, interest, costs, and other such further relief that the Court deems appropriate.

**ELEVENTH CLAIM FOR RELIEF**
**(Injunctive Relief– Against All Defendants)**

118.   To Market incorporates herein by reference each and every allegation set forth above.

119.   As noted above, the unlawful conduct of the defendants has caused, and continues to cause, substantial damage to To Market.

120.   Absent appropriate injunctive relief from the Court, To Market will continue to suffer irreparable harm.

121.   For example, the defendants have used, and continue to use, To Market's proprietary and confidential information in selling products through its Siena entity that are in direct competition with To Market's products.  By way of further example, Minite recently hired – and just last week tasked – To Market's former national sales manager to use To Market's confidential and proprietary information to approach To Market's largest supplier for the purpose of competing with To Market.

122.   The defendants also continue to interfere with To Market's business by unlawfully soliciting customers and current sales representatives of To Market.

123.   As a result of this unlawful conduct, To Market seeks the following injunctive relief:

(a) An order requiring defendants to immediately cease and desist from selling flooring products in competition with To Market;

(b) An order requiring defendants to immediately cease and desist using any confidential or proprietary information obtained by them from To Market during the tenure of the Broker Agreement;

23

(c) An order requiring the defendants to immediately return all confidential and proprietary information obtained from To Market during the tenure of the Broker Agreement;

(d) An order requiring the defendants to immediately cease and desist from contacting any existing customers or sales representatives for To Market; and

(e) An order requiring Minite and ALKS to relinquish all ownership interests in To Market previously granted to them.

120.    There is a substantial likelihood that To Market will prevail on the merits of this case.

121.    The public interest will not be disserved by the issuance of the requested injunctive relief.

WHEREFORE, Plaintiff, To Market, LLC, respectfully requests that judgment be entered in its favor and against all defendants and that the Court enter injunctive relief as requested above, together with any further relief that the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

/s/ Mark E. Chopko
Mark E. Chopko, Esquire
Leslie M. Greenspan, Esquire
Stradley Ronon Stevens & Young, LLP
1250 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20036

Attorneys for Plaintiff, To Market, LLC

24

## **VERIFICATION**

I, Glen Alpert, verify under penalty of perjury that the facts set forth in the foregoing

Complaint are true and correct.

Executed on November 12, 2013

_____
Glen Alpert

23

# 1853106

# EXHIBIT A

## BROKER AGREEMENT

This agreement (the "Agreement") is entered into as of _JANUARY 8_____, 1999 between To Market LLC, a Delaware limited liability company, having a place of business at 8899 Beverly Boulevard, Suite 918, Los Angeles, California 90048 ("To Market"), ALKS & ASSOCIATES, INC., a Maryland corporation, having its principal place of business at 3233 K Street, N.W., 2nd Floor, Washington, D.C. 20007 (the "Broker"), and Al Minite, individually, and in his capacity as an employee and shareholder of the Broker ("Minite").

Section 1.      Recitals.

     (a)    Minite, in his individual capacity, is experienced, knowledgeable and engaged in the business of marketing and promoting flooring products.

     (b)    To Market wishes to engage the services of Minite to assist in the marketing and promotion of its products.

     (c)    Minite is willing to provide such services through a newly formed corporation which is referred to herein as the Broker.

     (d)    The parties are entering into this Agreement on the basis of Minite providing his services in the capacity of an employee of the Broker. Accordingly, the rights and obligations of the Broker hereunder will be affected if Minite is no longer able to provide services hereunder on behalf of the Broker.

     (e)    Now, therefore, in consideration of the mutual promises and covenants contained herein, the parties agree as follows:

Section 2.      The Services.

Broker and Minite agree to serve as To Market's Eastern Regional Center by performing the services hereinafter described (the "Services") and assisting in the marketing and promotion of the products of To Market (the "Products"). The Services to be performed by Broker and Minite with respect to the Products and territories listed on Exhibit A hereto are as follows:

     (a)    Minite shall serve as Vice-President, Sales-Eastern Region, for To Market.

     (b)    Establish a Washington, D.C. office, staffed by an administrative assistant, to serve as the Eastern Regional Center for To Market.

     (c)    Build a viable sales organization for To Market by recruiting and training commissioned sales agents or dealers throughout the Eastern Region to represent To Market and the Products.

(d)     Assist To Market in overall sales and marketing strategies, including the addition of new products and development of national accounts.

(e)     Maintain regular and personal contract with To Market customers in the Washington, D.C./Baltimore, MD/Richmond, VA trading areas ("Trading Area"), selling the Products to customers and resolving customer service issues.

Section 3.     Broker Authority and Responsibilities.

(a)     Except as set forth in Section 4 below, Broker and Minite agree to devote their entire business efforts to To Market.

(b)     Broker shall receive orders for samples and materials for the Products.  All orders received by Broker shall be sent promptly to To Market's Los Angeles, CA office or to such other location specified by To Market.  All orders accepted by To Market shall be shipped by To Market directly to the customer.  To Market shall be responsible for all billings to and all payments from the customers.  All customer payments shall be sent directly to To Market.  Neither Broker, Minite nor their representatives shall collect any monies from the customers.

(c)     In performing the Services, Broker shall engage the services of independent sales agents and dealers.  All persons engaged by Broker shall be subject to prior approval of To Market and shall be To Market's agents, and To Market shall be solely liable for all commissions due to such sales agents and dealers.  The respective manufacturers shall be responsible for any claims arising from the sale of defective goods.

(d)     Broker and Minite shall comply with all applicable Federal, state and local laws, rules and regulations in performance of the Services.

(e)     Broker and Minite shall pay all taxes imposed upon him or assessed with respect to the Services.

Section 4.     Exclusivity Exception.

As stated in Section 3(a), Broker and Minite shall devote their entire business efforts to providing the Services for To Market under this Agreement.  Provided, however, Broker (and Minite in his capacity as an employee of Broker) are permitted to sell and promote a "carpet" line

-2-

in the Trading Area.  Broker and Minite shall only act in this capacity for a twelve-month period following the date Broker notifies To Market it has commenced business ("Commencement Date").  Any extension of such representation of a "carpet" line must be approved by To Market.  It is understood by the parties that the Eastern Regional Center office established by Broker will also serve as the office location of the aforestated "carpet" line represented by Broker.

Section 5.    Compensation.

In consideration of the performance of the Services, To Market shall pay the amounts specified on Exhibit B.

Section 6.    Expenses and Benefits.

To Market will cover a portion of the office expenses for the Eastern Regional Center for a period of one year following the Commencement Date.  This portion will be $4,000 per month paid to Broker.  This amount of $4,000 per month will reimburse all costs incurred by Broker, including, without limitation, telephone, office rent, administrative assistants, etc.  The foregoing notwithstanding, To Market will reimburse Broker and Minite for all To Market travel related expenses.

Section 7.    Term and Termination.

(a)    This Agreement shall be effective as of the Commencement Date for a period of one year.  Thereafter, this Agreement may be terminated at any time, for any or no reason, by any party upon giving thirty (30) days written notice to the other parties.

(b)    If To Market, Broker or Minite terminates this Agreement, Broker shall be entitled to commissions on orders actually shipped through the effective date of termination.  No other or additional payment will be due in respect of any such cancellation.

(c)    The foregoing notwithstanding, in the event of a breach of this Agreement by Broker or Minite, To Market may terminate this Agreement upon notice to Broker and Minite.  Similarly, in the event of a breach of this Agreement by To Market, Broker and Minite may terminate this Agreement upon notice to To Market.  If Minite is no longer employed by Broker, for any reason, To Market may terminate this Agreement with respect to Broker and, to the extent Minite is not performing the Services in an acceptable manner, may also terminate this Agreement with respect to Minite.

Section 8.   Notices.

All notices and other communications provided for herein shall be given in writing and shall be deemed to have been duly given if (a) delivered by hand, (b) mailed by certified or registered mail, (c) delivered by facsimile transmission (evidenced by competent proof), or (d) sent by recognized overnight courier, if to the intended recipient at the address specified below.

> To Market:     To Market LLC
> 8899 Beverly Blvd., Suite 918
> Los Angeles, California 90048
>
> Broker:        ALKS & Associates, Inc.
> 3233 K Street, N.W., 2nd Floor
> Washington, D.C.  20007
> Attention: Al Minite, President
>
> Minite:        Al Minite
> 15700 Amelung Lane
> Rockville, MD 20855

Section 9.   General Provisions.

(a)   Applicable Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

(b)   Independent Contractor.   The parties hereto hereby agree that the relationship created by this Agreement between To Market, on the one hand, and Broker and Minite, on the other hand, is that of independent contractor and not that of an employer and employee.  Broker and Minite shall have no authority to act for or on behalf of To Market or to bind To Market to any contract on any matter without the express approval in writing of To Market.

(c)   Assignment.  This Agreement and the rights and obligations hereunder shall not be assignable by any of the parties without the prior written consent of the other parties.

(d)   Complete Agreement and Amendments.  This Agreement, together with Exhibits A and B, which are hereby incorporated into and shall form part of this Agreement, represent the entire understanding between the parties as to all matters covered hereby or thereby, and supersedes all prior agreements between the parties, whether written or oral, with respect to the

subject matter hereof.   The provisions of this Agreement cannot be amended, modified, supplemented, or waived in any way except in writing signed by the parties.

(e)    Modification and Waiver.   None of the terms of this Agreement (including all exhibits provided for herein) shall be deemed to be waived or modified except by a written document drawn expressly for such purpose and executed by the party against whom enforcement of such waiver or modification is sought.  Failure or delay of either party hereto to enforce any of its rights under this Agreement shall not be deemed a modification or a continuing waiver by such party of any of its rights under this Agreement.

(f)    Severability.   Should any court or regulatory agency or body determine, in a form and manner which render such determination enforceable against either of the parties, that any provision of this Agreement is void, invalid, unenforceable, or illegal, such determination shall not affect any other provision of this Agreement, and this Agreement shall, if reasonable, be construed and performed as if such void, invalid, unenforceable, or illegal provision had never been contained herein.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the day and year first above written.

TO MARKET LLC

By: _____
Title: PRESIDENT ✓ CEO

ALKS & ASSOCIATES, INC.

By: _____
        Al Minite, President

_____
Al Minite

## EXHIBIT B

1.  <u>Commissions and Fees</u>.

    <u>Madera</u>.  A 2% over-ride for all Madera business sold in the Eastern Region.  In areas with no sales representation, only dealers, a commission will be paid to Broker at the same rate a sales representative would receive: (i.e., if the representative commission is 6% for selling Madera at $6.00 s/f, Broker will receive the 6% commission).

    <u>Montano Porcelain Tile</u>.  A $0.02 per square foot over-ride for all sales where there is in place a commissioned sales representative in the Eastern Region.  In areas with no sales representation, only dealers, Broker will receive a commission equal to the difference between the selling price and the printed To Market Montano base price (as determined pursuant to the printed price list), and, in addition, the $0.02 per square foot over-ride.

2.  <u>Membership Interest in To Market LLC</u>.

    A.  Provided that Broker and Minite are not in default under the Broker Agreement, a 2% Membership Interest in To Market will be distributed to Minite on December 31, 1999.  Thus, Minite will participate as a 2% Member of To Market commencing January 1, 2000.

    B.  In addition, subject to the Broker Agreement remaining in full force and effect, and Broker and Minite not being in default of the said Agreement, Minite will annually receive an additional 2% Membership Interest in To Market thereafter, until Minite has a Membership Interest in To Market, aggregating 8%.

    C.  It is currently contemplated that Broker and Minite will be representing a "carpet line," which Broker may sell in the Trading Area only.  If, at any time after December 31, 1999, Broker and Minite are no longer representing a carpet line and, instead, are 100% involved in the sales efforts of To Market products, To Market will accelerate the transfer of the remaining balance of the Membership Interest to bring Minite's aggregate membership in To Market to 8%, thereby eliminating the additional waiting period.

    D.  The grant of the Membership Interest is subject to Minite entering into a Member Agreement which provides, among other things, the option of the other Members and To Market to purchase the Membership Interest at "net book value" in the event that Minite ceases to be 100% involved in the sales efforts of To Market (for this purpose, excluding the representation of a "carpet line" during the 12 months following the Commencement Date).

E.   To Market will fully reimburse Minite for all federal, state, and local taxes incurred by Minite based on the income of To Market except to the extent Minite has received a distribution from To Market for such purposes as a Member of To Market.  If any distributions are made to Members of To Market from earnings arising after the date of this Agreement in excess of tax reimbursement, Minite shall receive 8% of that amount less the amount of any distribution that Minite receives as a result of being a Member of To Market.

F.   Should To Market be sold prior to such time as Minite has received a full 8% Membership Interest, Minite shall be paid compensation in an amount equal to the difference which Minite would have received had he been a full 8% Member and the amount he actually received based upon his Membership Interest at the time of sale.

#98225v5

# EXHIBIT B



**PHILIP WEXLER**
PRESIDENT & CEO

Mr. Al Minite                                                    August 27, 2013
15700 Amelung Lane                                    Sent via email + FedEx priority
Rockville, MD 20855

Dear Al:

This letter is written to notify you that effective September 1, 2013, you and ALKS & Associates, Inc. are hereby relieved of your duties as an independent broker for To Market L.L.C.

As you know this termination is somewhat overdue, particularly because of the fact that you have been marketing some flooring products from others sources, which are competitive with the products of To Market L.L.C. Compounded, you are now a direct competitor with your Siena flooring line.

To Market will continue to accept any new orders from ALKS over the next 60 days, as long as you follow our customary procedures, including the 25% deposit for material at the time of order.  To the extent that you have specified other projects using To Market products, we will agree to accept those orders, provided you register those projects with us within the next ten days.  We, of course, need to have record of those potential projects which you have specified so there is no confusion as to where those orders were initiated from.  All registered projects must include the following items:

- Name of the project or end-user
- Name of the architectural or design firm who created the specification
- Name of the To Market product(s) specified including color and square footage
- Approximate date of delivery

Finally, To Market wants to make arrangements to have all architectural books, brochures and individually labeled samples picked up from your office/showroom or warehouse, presently under your control, sometime next week. Please provide the contact name for us so we can make arrangements for the pick-up.  In addition, to the extent that most of the architectural books have been placed with third parties (ie: architects, design firms, end-user's or flooring contractors within the Washington D.C., Maryland, or Northern Virginia territory), we need a written record of the placement of those sample books to be hand delivered at the same time we collect our sample books from your office.  I fully expect that you will not remove those samples, as they are property of To Market L.L.C., who paid for samples and shipment of them to your office.

Thank you very much for your immediate attention in this matter.

We wish you good luck in your endeavors, and look forward to a cordial relationship in the future.

Sincerely,

Cc:  Glen Alpert

2347 Bronson Rd., Fairfield, CT 06824        (203) 259-8822        Fax (203) 259-8262        pwexler@ToMkt.com

AO 440 (Rev. 12/09; DC 03/10)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| To Market, LLC | ) |
| | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. |
| Alfred Louis Minite, ALKS & Associates, Siena, LLC, | ) |
| and Teresa Ann Matheson | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Alfred Louis Minite
15700 Amelung Lane
Derwood, Maryland 20855

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Mark E. Chopko, Esquire
Stradley Ronon Stevens & Young, LLP
1250 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20036

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____         _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09; DC 03/10)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09; DC 03/10)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| To Market, LLC | ) | |
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Alfred Louis Minite, ALKS & Associates, Siena, LLC, | ) | |
| and Teresa Ann Matheson | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   ALKS & Associates
3233 K Street, NW
Washington DC 20007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Mark E. Chopko, Esquire
Stradley Ronon Stevens & Young, LLP
1250 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20036

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09; DC 03/10)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

&#10138;  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

&#10138;  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

&#10138;  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

&#10138;  I returned the summons unexecuted because _____ ; or

&#10138;  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09; DC 03/10)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| To Market, LLC | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| Alfred Louis Minite, ALKS & Associates, Siena, LLC, | ) |
| and Teresa Ann Matheson | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Siena, LLC
3233 K Street, NW
Washington DC 20007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Mark E. Chopko, Esquire
Stradley Ronon Stevens & Young, LLP
1250 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20036

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09; DC 03/10)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09; DC 03/10)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| To Market, LLC | ) |
| | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| Alfred Louis Minite, ALKS & Associates, Siena, LLC, | ) |
| and Teresa Ann Matheson | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Teresa Ann Matheson
918 Langley Drive
Silver Spring, Maryland 20901


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Mark E. Chopko, Esquire
Stradley Ronon Stevens & Young, LLP
1250 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20036


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*ANGELA D. CAESAR, CLERK OF COURT*


Date: _____          _____
                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09; DC 03/10)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: